UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JOHNNIE B. ROSE,

                        Plaintiff,

    v.                                                     Case No. 24-cv-405-pp

CITY OF MILWAUKEE, *et al.*,

                        Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2) AND SCREENING AMENDED COMPLAINT (DKT. NO. 13) UNDER 28 U.S.C. §1915A**

---

      Plaintiff Johnnie B. Rose, who is incarcerated at the Milwaukee Secure Detention Facility and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants used excessive force during an unlawful arrest. On June 3, 2024, the court denied the plaintiff's motion to file an amended complaint because he had not attached a copy of the proposed amended complaint to his motion, but the court gave him an opportunity to file a proposed amended complaint by June 21, 2024. Dkt. No. 11. On June 6, 2024, the court received two copies of the plaintiff's proposed amended complaint. Dkt. Nos. 12, 13. Because the court has not yet screened the original complaint, this decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens the amended complaint that the court received on Jun3 6, 2024, dkt. no. 13. The amended complaint supersedes the original complaint and is the operative complaint

going forward. Massey v. Helman, 196 F.3d 727, 735 (7th Cir. 1999) (citing Carver v. Condie, 169 F.3d 469, 472 (7th Cir. 1999)).

I.  **Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

On May 6, 2024, the court ordered that the plaintiff was not required to pay an initial partial filing fee. Dkt. No. 8. The court will grant his motion for leave to proceed without prepaying the filing fee and will require him to pay the full $350 filing fee over time in the manner explained at the end of this order.

II. **Screening the Amended Complaint**

    A.    <u>Federal Screening Standard</u>

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the amended complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, the amended complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The amended complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. The Plaintiff's Allegations

The amended complaint names as defendants the city of Milwaukee, the Milwaukee Fire and Police Commission and Milwaukee Police Officers Josue Ayala and Joshua Hermann. Dkt. No. 13 at 1. The plaintiff alleges that on October 23, 2020, he was driving home in his 2015 Kia Optima home; he explains that he worked at Campbell Foods. Id. As he was heading south on 27th Street in Milwaukee, a car heading north passed by and "flashed a blinding light directly into [his] eyes." Id. at 1–2. The north-bound car then turned around and began to follow the plaintiff. Id. at 2. The plaintiff noticed "flashing lights" in his rear-view mirror that he recognized "as being a police vehicle." Id. The plaintiff says he "did not flee but immediately 'pulled over and stopped.'" Id.

The plaintiff recounts that at the time of the alleged events, "[t]he City of Milwaukee had been dealing with a huge problem with a group of teenagers known as the Kia Boys who committed auto thefts." Id. The plaintiff says that he was driving a Kia and that he "assumed that perhaps officers pulled him over thinking his car was stolen." Id. He "reached to get his license, registration and insurance," when officers approached the vehicle and yelled at him to open the door. Id. The plaintiff alleges that the officer at his door "had his hand on his service weapon, threatening the plaintiff as if the officers would use deadly force." Id. at 2–3.

The plaintiff says he got out of his car "and was immediately grabbed and excessively punched over and over until nearly unconscious." Id. at 3. He

alleges that the officers broke his ankle and knocked out one of his teeth. Id. They then handcuffed him and forced him to his feet. Id. The plaintiff alleges that he "could not walk or breathe," and an ambulance came to escort him to a nearby hospital. Id. Doctors diagnosed the plaintiff with a broken ankle, a dislodged tooth and "head injuries and contusions." Id. The plaintiff says photos showed "swelling as if the plaintiff had been hit with a blunt object." Id.

The plaintiff recounts that he was released from the hospital and arrested "on false allegations of drug charges, resisting arrest and bail jumping." Id. He says the officers admitted to punching him "approximately 16 times to his ribs, face and head" and to knocking out his tooth and breaking his ankle. Id. at 3–4. The plaintiff alleges that the officers "stat[ed] 'that they thought' the plaintiff was reaching for a gun." Id. at 4. The plaintiff reports that the district attorney "did not process a single charge," and he was not prosecuted. Id. He asserts that there was no "justification for unreasonable use of excessive force," and no weapons were found on him. Id. The plaintiff says that the officers who stopped and assaulted him were "of the opposite race." Id.

The plaintiff alleges that he "filed a citizens complaint" the day of the incident. Id. He says that because of the COVID-19 pandemic, the "State and Federal Building had been closed to the public." Id. He says he "went without getting a response to his administrative complaint" and received no cooperation from the Milwaukee Police Department when he tried calling. Id. at 4, 6. He also "wrote letters asking for a response to his complaint," but the pandemic "made it where the plaintiff was provided with no option but to write or call to

get answers." Id. at 6. He says that it was not until April 16, 2024 that the Fire and Police Commission told him that the Milwaukee Police Department had dismissed his complaint, but he says that the letter of dismissal he received does not list a date of dismissal. Id. He asserts that his "claim was delayed by the defendants." Id. at 7. The plaintiff he says that he has exhibits "to support sufficiency of his claim" that he will provide "[a]t the appropriate stage." Id. at 7. He does not specify what relief he seeks.

C. Analysis

The court analyzes the plaintiff's allegations about his arrest under the Fourth Amendment, which guarantees citizens the right "to be secure in their persons . . . against unreasonable . . . seizures" of the person. Graham v. Connor, 490 U.S. 386, 394 (1989); see Tennessee v. Garner, 471 U.S. 1, 7–8 (1985) (claim of excessive force to effect arrest analyzed under a Fourth Amendment standard). Under the Fourth Amendment, the court applies an objective reasonableness test, considering the reasonableness of the force based on the events confronting the defendants at the time and not on their subjective beliefs or motivations. See Horton v. Pobjecky, 883 F.3d 941, 949–50 (7th Cir. 2018) (citing Graham, 490 U.S. at 396–97; C'nty of Los Angeles v. Mendez, 581 U.S. 420, 426–27 (2017)). The court must consider "the totality of the circumstances, including the pressures of time and duress, and the need to make split-second decisions under intense, dangerous, uncertain, and rapidly changing circumstances," without resort to "hindsight's distorting lens." Id. at

6

950 (citing Graham, 490 U.S. at 396; Ford v. Childers, 855 F.2d 1271, 1276 (7th Cir. 1988)).

The plaintiff alleges that when the officers pulled him over, he was heading home. He says he complied with their signal and pulled over without attempting to flee. He does not say whether he was speeding or otherwise violating a traffic law that might have justified the stop. He instead opines that he thought the officers may have pulled him over because he was driving a Kia, a make of care that frequently was being stolen in Milwaukee in 2020. He says he was reaching for his license, registration and insurance when the officers approached his car, yelled at him to get out and then assaulted him. He alleges that there was no justification for their actions and use of force, which caused him significant injury including a broken ankle and dislodged tooth. The plaintiff's allegations suggest that he made no furtive movements or signs of aggression warranting the officers' use of force. Accepting these allegations as true for the purpose of screening, the court finds that the plaintiff states a Fourth Amendment claim of excessive force during his arrest against Officers Ayala and Hermann.

The plaintiff also alleges that the officers arrested him based on false allegations and falsely charged him with crimes involving drugs, resisting arrest and bail jumping, which never were prosecuted. These allegations suggest an additional Fourth Amendment claim of false arrest. See Alexander v. McKinney, 692 F.3d 553, 558 (7th Cir. 2012). The court also will allow the

plaintiff to proceed on this Fourth Amendment claim against Officers Ayala and Hermann.

The plaintiff says that the officers were "of the opposite race" of him. To the extent the plaintiff meant to allege that the officers arrested him in violation of the Equal Protection Clause of the Fourteenth Amendment, he has not stated a claim. The plaintiff does not allege that the officers stopped him or used excessive force *because* of his race. He says only that he and the officers are of different races. The reason he gives for why he believes that the officers may have stopped him was the fact that he was driving a Kia, and the city of Milwaukee was dealing with a spate of Kia thefts. The plaintiff's allegations about his and the officers' races do not state a violation of the Fourteenth Amendment.

The plaintiff names as a defendant the City of Milwaukee. A municipality like the City of Milwaukee may "be held liable under § 1983 only for its own violations of federal law." Los Angeles County v. Humphries, 562 U.S. 29, 36 (2010) (citing Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)). The plaintiff may proceed against the City under §1983 only if he demonstrates "that there was an 'official policy, widespread custom, or action by an official with policy-making authority [that] was the "moving force" behind his constitutional injury.'" Estate of Perry v. Wenzel, 872 F.3d 439, 461 (7th Cir. 2017) (quoting Daniel v. Cook C'nty, 833 F.3d 728, 734 (7th Cir. 2016)). The plaintiff does not allege that the officers stopped him, used excessive force or unlawfully arrested him because of any official policy or custom. He alleges

that the officers acted of their own volition when they stopped, assaulted and arrested him. The court will dismiss the City of Milwaukee because the amended complaint does not state a claim against it.

The plaintiff also names as a defendant the Milwaukee Fire and Police Commission, which he alleges denied his administrative complaint against the officers. But claims under §1983 may be brought only against "persons," and the Fire and Police Commission is not a person. Nor is it a municipality; it is an "*agenc[y]* of a municipality—[an] agenc[y] of the city of Milwaukee." Burks v. Tate, No. 20-cv-782, 2023 WL 7301853, at *9 (E.D. Wis. Mar. 30, 2023). As this court recently held, the Fire and Police Commission, as an agency of the city of Milwaukee, cannot be sued separately from the city. Id. (citing Shabani v. City of Madison, Case No. 19-cv-65-bbc, 2019 WL 1060613, at *2 (W.D. Wis. Mar. 6, 2019) (holding that the Police and Fire Commission is "a city agency or department that cannot be sued under § 1983 separately from the City of Madison"). Because the court is dismissing the city of Milwaukee, it also will dismiss the Milwaukee Fire and Police Commission as a defendant.

As a final note, the plaintiff alleges that the events he describes occurred on October 23, 2020. Dkt. No. 1. The limitation period for §1983 actions arising in Wisconsin is the three-year limitation provision in Wis. Stat. §893.54 (2018). Wisconsin previously allowed a six-year limitation period, but in 2018 it reduced that limitation period to three years. See Huber v. Anderson, 909 F.3d 201, 207 (7th Cir. 2018) (citing 2017 Wis. Act 235 (eff. Apr. 5, 2018)) (reducing applicable statute of limitations from six to three years). Because the plaintiff

alleges that these events occurred on October 23, 2020, the law requires him to bring any claims based on events that happened on that date no later than October 23, 2023. The court did not receive the plaintiff's complaint until April 3, 2024. The plaintiff's complaint may be untimely.

The plaintiff says, however, that he filed an administrative complaint about these events and the administrative process was not complete until April 16, 2024, when the Fire and Police Commission sent him a letter of dismissal of his complaint. The plaintiff may be entitled to equitable tolling while he completed the administrative grievance process. See Walker v. Sheahan, 526 F.3d 973, 978 (7th Cir. 2008) (citing Johnson v. Rivera, 272 F.3d 519, 522 (7th Cir. 2001)). It is not clear whether equitable tolling applies to the "citizens complaint" that the plaintiff says he brought against the officers after he was released from custody. But because untimeliness is an affirmative defense, the court will not decide at screening whether the plaintiff's complaint is untimely. Nothing in this decision forecloses the defendants from raising the affirmative defense of untimeliness in a motion to dismiss or for summary judgment.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DISMISSES** the defendants City of Milwaukee and Milwaukee Fire and Police Commission.

The court **ORDERS** the U.S. Marshals Service to serve a copy of the amended complaint and this order on Milwaukee Police Officers Josue Ayala and

Joshua Hermann under Federal Rule of Civil Procedure 4. Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). Although Congress requires the court to order service by the U.S. Marshals Service, it has not made any provision for either the court or the U.S. Marshals Service to waive these fees. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2), (a)(3). The U.S. Marshals Service will give the plaintiff information on how to remit payment. The court is not involved in collection of the fee.

The court **ORDERS** Officers Ayala and Hermann to file a responsive pleading to the amended complaint.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the full **$350** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Milwaukee Secure Detention Facility, where the plaintiff is confined.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court

---

[1] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution and Oshkosh Correctional Institution.

advised of his address may result in the court dismissing this case without further notice.

Dated in Milwaukee, Wisconsin this 7th day of July, 2024.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**