JOHNNIE B. ROSE,

                Plaintiff,

v.                                                       Case No. 24-cv-405-pp

JOSUE AYALA
and JOSHUA HERMANN,

                Defendants.

**ORDER DENYING AS MOOT PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 20), GRANTING DEFENDANTS' MOTION TO DISMISS (DKT. NO. 27) AND DISMISSING CASE WITH PREJUDICE**

      Plaintiff Johnnie B. Rose is proceeding under 42 U.S.C. §1983 on Fourth Amendment claims against Milwaukee Police Officers Josue Ayala and Joshua Hermann based on events he alleged occurred on October 23, 2020. On September 3, 2024, the court received from the defendants a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 27. The plaintiff opposes the motion and has filed several letters and documents in opposition. Dkt. Nos. 32, 34–36, 38. He also asks the court to appoint him a lawyer. Dkt. No. 20. This order grants the defendants' motion, denies as moot the plaintiff's motion for appointment of counsel and dismisses the case with prejudice.

I.     **Procedural Background**

      The court received the plaintiff's complaint on April 3, 2024. Dkt. No. 1. Before the court had an opportunity to screen it, the plaintiff filed a motion to amend the complaint "to include 'vital information' he had received, including

the names of some defendants." Dkt. No. 11 (quoting Dkt. No. 10). The court denied the motion because it did not comply with the court's Civil Local Rules for amended pleadings. Id. But the court allowed the plaintiff to file a complete amended complaint that complied with those rules by June 21, 2024. Id.

On June 6, 2024, the court received two, identical copies of the plaintiff's amended complaint. Dkt. Nos. 12, 13. The court screened the amended complaint, allowed the plaintiff to proceed on Fourth Amendment claims against Officers Ayala and Hermann and dismissed all the other defendants and claims. Dkt. No. 15. But the court speculated that the amended complaint might be untimely under Wisconsin's three-year limitation period because the court "did not receive the plaintiff's complaint until April 3, 2024," more than three years after the events that the plaintiff alleged occurred on October 23, 2020. Id. at 9–10. The court did not dismiss the amended complaint as untimely because the plaintiff alleged that he "filed an administrative complaint about these events and the administrative process was not complete until April 16, 2024." Id. at 10. But the court observed that the defendants could "rais[e] the affirmative defense of untimeliness in a motion to dismiss or for summary judgment." Id.

The plaintiff moved to amend his complaint again to add an additional fact (that the officers had pulled him over for running a stop sign), to amend his request for relief, to ask the court to allow him to proceed against the City of Milwaukee and to add defenses to untimeliness. Dkt. No. 18. The court allowed the amendment only to the extent of allowing the plaintiff to add the

new alleged fact and to allow him to update his damages request to $5 million. Dkt. No. 19. The court denied the motion in all other respects, explaining that "[i]f the defendants move to dismiss the complaint on the basis that it is untimely, the plaintiff may raise any defense to that motion, including any tolling defense." Id. at 5.

On September 3, 2024, the defendants filed a motion to dismiss the amended complaint as untimely. Dkt. No. 27. The plaintiff opposes the motion. Dkt. No. 32. The defendants filed a reply in support of their motion, dkt. no. 33, and the plaintiff filed a sur-reply and several letters providing additional information in support of his opposition. Dkt. Nos. 34–36, 38.

## II. Motion to Dismiss (Dkt. No. 27)

### A. The Defendants' Position

The defendants recount the claims on which the court allowed the plaintiff to proceed—that Ayala and Hermann used excessive force and falsely arrested the plaintiff in violation of his Fourth Amendment rights during a traffic stop on October 23, 2020. Dkt. No. 27 at 2. They assert that the three-year limitation period in Wisconsin applies to the plaintiff's claims. Id. (citing Wis. Stat. §893.54 (2018)). They argue that the plaintiff was required to bring claims challenging the October 23, 2020 traffic stop by October 23, 2023, but that he did not file his complaint until April 3, 2024. Id. They contend that the plaintiff's claims are time-barred "unless the statute was equitably tolled." Id.

The defendants recount that the amended complaint asserted that the plaintiff "was delayed in filing suit pending the result of a civilian complaint

filed with the City of Milwaukee Fire & Police Commission [FPC]." Id. at 3 (citing Dkt. No. 13 at 4, 6). The defendants say this "argument is inapposite in several ways." Id. They first assert that 42 U.S.C. §1997e(a) does not apply—and therefore that the plaintiff was not required to exhaust administrative remedies before bringing this suit—because the amended complaint does not challenge prison conditions. Id. They also contend that the FPC's complaint procedure "is disciplinary in nature" and cannot provide damages, which means "the civilian complaint process is not an 'administrative remedy' responsive to the relief Plaintiff seeks" in the amended complaint. Id. Finally, the defendants say that "Plaintiff's assertion that the statute should be tolled because he was waiting for an FPC decision does not line up because his original complaint was filed on April 3, 2024 . . . but the FPC decision was not issued until April 16, 2024." Id. at 4. They say this shows that the plaintiff was not prevented from bringing his suit before the FPC issued its decision, and that he could have brought it before the October 23, 2023 deadline passed. Id. The defendants also emphasize that the plaintiff "was represented by counsel during the statutory period," even though he brought this lawsuit *pro se*.[1] Id.

B.  The Plaintiff's Opposition

The plaintiff raises several arguments in opposition to the defendants' motion to dismiss. Dkt. No. 32. He first asserts that the COVID-19 pandemic in

---

[1] In their motion and brief, the defendants cite "Muche Dec." and two exhibits. Dkt. No. 27 at 3. But the defendants did not attach declaration or any exhibits to their motion to dismiss, and did not separately file any declarations or exhibits.

4

Case 2:24-cv-00405-PP    Filed 12/23/24    Page 4 of 19    Document 39

2020 "must be took [*sic*] into consideration." Id. at 1–2. He then says that on the day of the incident (October 23, 2020), he filed a civilian complaint with the Milwaukee Police Department (MPD) about the alleged excessive force used. Id. at 2. He says he did not receive a response for several months, so he reached out to the City and Safety Building in downtown Milwaukee. Id. at 2–3. He says he "was told . . . to call or write to get a definitive response" because the building was closed to the public during the pandemic. Id. at 3. He says he still did not "get any cooperation from the [MPD]," so he contacted the FPC. Id.

The plaintiff attached a mail log from the Ozaukee County Jail showing his mail received and sent from the jail January 9 through March 13, 2023. Dkt. No. 32-1 at 2–8. The plaintiff says these records show that he sent letters about his complaint to the FPC on March 5, 11 and 13, 2023, but did not receive a response. Dkt. No. 32 at 3–4 (citing Dkt. No. 32-1 at 6–8). He says he "was seeking vital information" from the FPC, including why the defendants had not responded to his civilian complaint. Id. at 4–5. He asserts that he filed his lawsuit in this court without a response from the FPC, even though he did so after the statute of limitation had elapsed. Id. at 5.

The plaintiff says he received a response from the FPC on April 16, 2024, advising him that the FPC had sent "a disposition . . . to the Ozaukee County Jail on March 31, 2023." Id. (citing Dkt. No. 32-1 at 10). The April 16, 2024 letter is addressed to the plaintiff at Milwaukee Secure Detention Facility, where he was incarcerated at the time. Dkt. No. 32-1 at 10; see Offender Detail, https://appsdoc.wi.gov/lop/details/detail (DOC #174952). This letter states

5

Case 2:24-cv-00405-PP    Filed 12/23/24    Page 5 of 19    Document 39

that it is unclear why the plaintiff "did not receive a copy of" the March 31, 2023 letter, which is included with the April 16 letter. Dkt. No. 32-1 at 10–11. The March 31, 2023 letter is addressed to the plaintiff at Ozaukee County Jail. Id. at 11; Dkt. No. 32 at 3–4. The March 31, 2023 letter recounts that the FPC received the plaintiff's complaint "dated 03/17/2023." Id. It says that the plaintiff's complaint "involves allegations that, if true, would constitute misconduct that stemmed from an incident that occurred on 10/23/2020, nearly 2½ years ago." Id. It says that an investigator reviewed the "report system and located Complaint #PF-2020-0468, which [the plaintiff] filed with MPD on 10/23/2020 regarding this very incident." Id. The letter explains that the MPD had investigated that complaint and found "no violation of MPD's Standard Operating Procedures or Code of Conduct." Id. at 11–12. The FPC dismissed the October 2020 complaint and closed the matter. Id. at 12.

The plaintiff points out that the FPC's March 31, 2023 letter does not say when the FPC dismissed his complaint and closed the matter. Dkt. No. 32 at 7–8. He asserts that if the FPC had sent him the disposition notice "within a reasonable time frame, [h]e would have filed his claim 13 months earlier." Id. at 6. He claims that he was diligently pursuing in the meantime, and that the defendants delayed him from filing his §1983 complaint by not providing "a timely complaint response" to his civilian complaint, so he is entitled to equitable tolling. Id. at 6–7. He asserts that he was not issued a written decision on his civilian complaint or told when the FPC "completed its investigation" and dismissed his complaint. Id. at 7. He says that without this

6

information, he could not "show proof that he had exhausted his administrative remedies" before filing his §1983 complaint. Id.

      C.      The Defendants' Reply

In reply, the defendants ask the court to take judicial notice of the plaintiff's arrest and conviction records, though they do not explain why those records are relevant. Dkt. No. 33 at 2–3. They argue that the plaintiff was incarcerated at Ozaukee County Jail during at least some of the time when he says he filed his civilian complaint, so he "was unable to visit in person." Id. at 3. They assert that the COVID-19 pandemic otherwise did not prevent the plaintiff from filing his complaint, which he says he was able to do by mail. Id.

The defendants assert that the plaintiff's mail logs from Ozaukee County Jail attached to his complaint do not show the mail he received or sent after March 13, 2023, which would have included the March 31, 2023 letter from the FPC notifying the plaintiff that it had investigated his complaint and closed the matter. Id. at 4. The defendants contend that the plaintiff does not say what steps he took to pursue his complaint outside of the "eight days of activity" in March 2023, when he sent three letters to the FPC about his complaint. Id. The defendants reiterate that even if the plaintiff had diligently pursued this remedy, it was unnecessary under §1997e(a), which applies only to lawsuits about prison conditions. Id. (citing 42 U.S.C. §1997e(a)).

The defendants say that another of the plaintiff's exhibits—a narrative report of the events from October 23, 2020—identifies the officers who arrested him. Id. at 4 (citing Dkt. No. 32-1 at 16–21). They point out that the heading of

7

these documents contains the date January 4, 2021, which they say "suggests that they were printed on [that date]—long before October 23, 2023. Id. at 4–5.

Finally, the defendants recount that the plaintiff filed this suit on April 3, 2024—several days before he received the FPC letter on April 16, 2024—which shows that he was aware of the alleged violations of his rights and could have filed suit earlier—before the statute of limitations had elapsed—even without the response from the FPC. Id. The defendants assert that the plaintiff failed to show that, "'though no fault or lack of diligence on his part,'" he was unable to sue before the statute of limitations had run. Id. at 5 (quoting Donald v. Cook Cnty. Sheriff's Dep't, 95 F.3d 548, 561 (7th Cir. 1996)). They ask the court to dismiss the claims against them as untimely. Id.

D.  Additional Filings

The plaintiff filed a reply to the defendants' reply brief (which he incorrectly describes as the defendants' "second motion to dismiss with prejudice"). Dkt. No. 34. He says that this "new motion is not supported by any factual evidence" and cites "misleading information." Id. at 1.

This court's local rules lay out a three-step motion process: the original motion and supporting brief (Civil Local Rule 7(a) (E.d. Wis.)), the non-moving party's response (Civil L.R. 7(b)) and the moving party's reply (Civil L.R. 7(c)). The defendants' reply brief is not a second motion to dismiss. It is a Civil L.R. 7(c) reply brief in support of their motion to dismiss, appropriately responding to the arguments in the plaintiff's brief in opposition to their motion. The plaintiff's filing is a sur-reply to the defendants' reply brief. Neither the Federal

Rules of Civil Procedure nor this court's local rules allow parties to file a sur-reply. The plaintiff did not ask the court's permission before filing it, although the same day the court received the sur-reply it received from the plaintiff a letter notifying the court that he had responded to the defendants' reply brief "to establish that the Defendants submitted false reports to the court." Dkt. No. 35.

"'The decision to permit the filing of a surreply is purely discretionary and should generally be allowed only for valid reasons, such as when the movant raises new arguments in a reply brief.'" Watt v. Brown County, 210 F. Supp. 3d 1078, 1082 (E.D. Wis. 2016) (quoting Meraz-Camacho v. United States, 417 F. App'x 558, 559 (7th Cir. 2011)). The defendants did not raise new arguments in their reply brief. They responded to the arguments and assertions in the plaintiff's brief in opposition to their motion to dismiss and to his attached exhibits, and they reiterated the position they explained in their principal brief in support of their motion. The court has disregarded the plaintiff's unauthorized sur-reply and did not consider it in reaching the decisions in this order.

On November 4, 2024, the court received a letter from the plaintiff in which he discusses documents he received in response to an open records request he filed with the MPD. Dkt. No. 36. He says that these documents show that he did not have access to police records about the October 23, 2020 incident—including the narrative report that the defendants cite in their reply brief—until after he filed his §1983 complaint and after his October 23, 2023

limitation deadline had passed. Id. at 1. He says these records show that no charges were filed against him related to the events of October 23, 2020. Id. He asserts that these documents also prove his assertion "that no one would respond to [his] complaints." Id. at 2.

The defendants filed a letter in response to the plaintiff's letter, in which they appear to concede that the plaintiff "had not received all the information he sought until after the limitation period had run." Dkt. No. 37. They nonetheless "deny that this establishes a legal or equitable defense to the statute where the information Plaintiff possessed was sufficient to initiate suit." Id.

The plaintiff responded to the *defendants'* letter to reiterate that he did not have access to the police records and the narrative report in 2021. Dkt. No. 38. He says that he received those records in May 2024, when an attorney "who initially investigated the incident" in 2021 sent the plaintiff the reports. Id. at 1. The plaintiff reiterates his assertions in opposition to the defendants' motion to dismiss and the arguments he made in opposition to their reply brief, including his assertions that MPD never responded to his civilian complaint and that the court should consider the effect of the COVID-19 pandemic in determining whether he is entitled to equitable tolling. Id. at 2–4.

### III. Analysis

#### A. Legal Standard

The defendants bring their motion under Fed. R. Civ. P. 12(b)(6), which allows a party to file a motion to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The court

10
Case 2:24-cv-00405-PP    Filed 12/23/24    Page 10 of 19    Document 39

explained in the screening order that to state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

A defendant may file a Rule 12(b)(6) motion to dismiss only on the pleadings, which include "the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." Geinosky v. City of Chicago, 675 F.3d 743, 745 n.1 (7th Cir. 2012). If the moving party presents additional documents outside those pleadings, the court either must decline to consider them or convert the motion into a motion for summary judgment under Fed. R. Civ. P. 56. See Fed. R. Civ. P. 12(d); Geinosky, 675 F.3d at 745 n.1. The court may consider new allegations in the plaintiff's response to the motion to dismiss only if "'they are consistent of the allegations in the complaint.'" Smith v. Dart, 803 F.3d 304, 311 (7th Cir. 2015) (quoting Gutierrez v. Peters, 111 F.3d 1364, 1367 n.2 (7th Cir. 1997); and Albiero v. City of Kankakee, 122 F.3d 417, 419 (7th Cir. 1997)).

The defendants did not attach to their motion additional documents outside the pleadings (though they cited documents that they did not file with the court). The plaintiff attached additional documents to his response brief. But those additional documents are consistent with the allegations in the amended

complaint and relate to his allegations about his FPC complaint. The court finds that there are no additional matters it must decline to consider and concludes that it may decide the defendants' motion without converting it into one for summary judgment.

B. <u>Discussion</u>

The defendants assert that the plaintiff was not required to exhaust administrative remedies before bringing his lawsuit because his allegations do not involve prison conditions. They assert that even if he was required to first exhaust his remedies, his civilian complaint with the FPC is not an "administrative remedy" because it could not provide him monetary damages that he seeks in his lawsuit. Finally, they assert that even if the plaintiff is correct that he did not receive the names of the officers before the statutory deadline, he did not need that information to file his §1983 lawsuit. They conclude that he has not shown he is entitled to equitable tolling, and argue the court should dismiss the case as untimely.

The court agrees that because the plaintiff's §1983 lawsuit is not related to prison conditions, §1997e(a) does not apply, and the plaintiff was not required to exhaust his administrative remedies before bringing his suit. A different district court in this circuit has explained that

> [t]he text of § 1997e is clear that in order to be subject to the PLRA's exhaustion requirement, the lawsuit in question must be with respect to prison conditions. Here, Plaintiff's suit involves allegations of excessive force occurring by police officers in an apartment and outside of a jail or prison. Since Plaintiff's suit does not involve a prison condition, even though he may have been incarcerated or confined when he filed suit, he was not required to exhaust an administrative remedies process prior to filing suit. Any

> grievances Plaintiff may have filed . . . therefore would not have tolled the two year statute of limitations.

Webb v. Webb, Case No. 16-CV-1337, 2018 WL 910487, at *3 (S.D. Ill. Jan. 25, 2018), report and recommendation adopted, 2018 WL 889046 (S.D. Ill. Feb. 14, 2018).

The same is true here. The plaintiff alleges that on October 23, 2020, the officers stopped him while he was driving his car, assaulted him and left him with injuries requiring medical treatment. He was not incarcerated in a jail or prison when the alleged events occurred, so there is no administrative process he was required to follow to put prison or jail officials on notice of his claims and provide them an opportunity to address them. Because he was not subject to §1997e(a)'s exhaustion requirement, the plaintiff was free to bring his §1983 lawsuit any time after the alleged incident even though he was later incarcerated. That means that under §1997e(a), he was not required to file the civilian complaint with the MPD and the follow-up letters to the FPC before filing his lawsuit in federal court, and those filings did not toll (pause) his three-year limitation period.

It is incorrect that the plaintiff's civilian complaint with the MPD cannot be considered an administrative remedy because he could not seek damages. The Seventh Circuit has held that §1997e(a) requires incarcerated litigants to exhaust *all* available administrative remedies, even if the litigant "is requesting relief that the relevant administrative review board has no power to grant, such as monetary damages." Dole v. Chandler, 438 F.3d 804, 808–09 (7th Cir. 2006) (citing Porter v. Nussle, 534 U.S. 516, 532 (2002)); see Perez v. Wis. Dep't of

Corr., 182 F.3d 532, 537–38 (7th Cir. 1999). But this is irrelevant because, as the court just explained, the plaintiff was not required to exhaust administrative remedies under §1997e(a) (including by filing a civilian complaint with the MPD) before bringing his §1983 complaint.

Nonetheless, the plaintiff asserts that he is entitled to equitable tolling. A court may invoke the doctrine of equitable tolling where a party shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010). "Equitable tolling is an extraordinary remedy and so 'is rarely granted.'" Obriecht v. Foster, 727 F.3d 744, 748 (7th Cir. 2013) (quoting Simms v. Acevedo, 595 F.3d 774, 781 (7th Cir. 2010)). "A [plaintiff] bears the burden of establishing both elements of the *Holland* test; failure to show either element will disqualify him from eligibility for tolling." Mayberry v. Dittman, 904 F.3d 525 529–30 (7th Cir. 2018).

The plaintiff asserts that he could not bring his lawsuit until he received "vital information" from the FPC, including the names of the officers who stopped him on October 23, 2020. He contends that he is entitled to equitable tolling of the limitation period because he did not receive a response from the FPC providing him the names until April 16, 2024. The parties argue back and forth about when the plaintiff first received the police records and narrative that he attached to his response to the defendants' motion to dismiss. Defense counsel's November 6, 2024 letter appears to concede that the plaintiff did not receive this information until after the limitation period had expired. But counsel

contends that the plaintiff nonetheless had adequate information to file his complaint on time.

The plaintiff submitted his mail log from the Ozaukee County Jail, which shows that in March 2023, he sent the FPC three letters. These logs do not show his received mail on March 31, 2023, the date on which the FPC sent a letter to the plaintiff at Ozaukee County Jail about his complaint. The plaintiff says he did not receive this letter until April 2024, but he provided no information about what efforts he took to diligently pursue his rights between March 2023 and April 2024. He says he was waiting to file his §1983 lawsuit until he received the FPC's response and learned the names of the officers. But the court received his §1983 complaint on April 3, 2024—almost two weeks *before* he says he received the April 16, 2024 FPC letter—while he was at Milwaukee Secure Detention Facility. This suggests that the plaintiff knew he could file a complaint without the FPC response but did not diligently pursue his rights, waiting to file his complaint until it was too late. Nonetheless, he insists that he is entitled to equitable tolling because he did not receive a response from the FPC until after his filing deadline had expired.

The plaintiff has not shown that he is entitled to equitable tolling. Even if the plaintiff did not know the names of the officers who allegedly assaulted him, that did not prevent him from filing a §1983 complaint about their actions. The plaintiff needed only to generally allege in his complaint what happened—what he believed unknown officers did that violated his rights. In fact, his initial complaint does just that, alleging that on October 23, 2020, two

Milwaukee Police Officers pulled him over without a warrant while he was driving his car, threatened him and assaulted him when he exited his car. Dkt. No. 1 at 1–2. He says he grieved the officers' actions to the Chief of Police and FPC but did not receive a response. Id. at 2. The complaint says that the plaintiff wanted "the officers to face civil battery charges" for the assault and that he wanted "$5 million dollars" for the injuries he suffered. Id. at 4.

The plaintiff did not identify the officers in his original complaint, and he did not need their identities to state a claim under §1983. His complaint alleges what happened, who did it (Milwaukee Police officers) and why he believes the officers' actions violated his rights. Those allegations were enough to state a Fourth Amendment claim even without the officers' names. The plaintiff could have filed his §1983 complaint any time after October 23, 2020, used a John Doe placeholder for the officers' identities and later filed a motion to substitute their names when he learned them. Alternatively, when it screened the original complaint, the court could have added the John Doe placeholder on its own and allowed the plaintiff to proceed against the officers. That is a common practice when litigants—especially those representing themselves—do not know the names of the people who they believe violated their rights. See Donald, 95 F.3d at 555–56 (noting that courts are charged with assisting unrepresented litigants who state allegations against individuals not necessarily named in the caption of their complaint).

The plaintiff also asserts that the court must consider the effects of the COVID-19 pandemic when determining whether he is entitled to equitable

tolling. The mere fact of the pandemic is not an "extraordinary circumstance" warranting equitable tolling. The court received and sent mail as usual throughout the pandemic (although sometimes with minor delays). The plaintiff was not incarcerated in October 2020, and he provides no information explaining "why the pandemic prevented him from filing a timely [complaint]." Katz v. United States Dep't of Lab., 857 F. App'x 859, 864 (7th Cir. 2021). The pandemic began months before the October 23, 2020 incident and the federal COVID19 Public Health emergency ended May 11, 2023—months before the October 23, 2023 limitation deadline for the plaintiff to file his complaint. See Brown v. Unknown Party, Case No. 22-3128, 2023 WL 2818004, at *1 (7th Cir. Apr. 7, 2023) (affirming denial of equitable tolling where COVID-19 related restrictions in 2020 "[a]t most" prevented incarcerated litigating "from discovering the filing deadline during that one year"). The plaintiff has not shown that the COVID-19 pandemic affected his ability to timely file this lawsuit or how it prevented him from doing so.

The defendants have shown that the plaintiff did not timely file his §1983 complaint, and the plaintiff has not demonstrated that he is entitled to equitable tolling. The plaintiff has not shown that he was diligently pursuing his rights before the statutory deadline elapsed, and not knowing the identities of the officers who allegedly violated his rights was not an "extraordinary circumstance" that prevented him from timely filing his complaint. The court will grant the defendants' motion to dismiss and will dismiss this case with

prejudice. Because the court is dismissing the case, it will deny as moot the plaintiff's motion to appoint counsel. Dkt. No. 20.

## IV. Conclusion

The court **DENIES AS MOOT** the plaintiff's motion to appoint counsel. Dkt. No. 20.

The court **GRANTS** the defendants' motion to dismiss this case as untimely. Dkt. No. 27. The court **ORDERS** that this case is **DISMISSED WITH PREJUDICE**. The clerk will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **thirty days** of the entry of judgment. See Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. See Fed. R. App. P. 4(a)(5)(A). If the plaintiff appeals, he will be liable for the $605 appellate filing fee regardless of the outcome of the appeal. If the plaintiff seeks to proceed on appeal without prepaying the appellate filing fee, he must file a motion in *this court*. See Fed. R. App. P. 24(a)(1). The Court of Appeals may assess the plaintiff a "strike" if it concludes that his appeal has no merit. If the plaintiff accumulates three strikes, he will not be able to file a case in federal court (except a petition for *habeas corpus* relief) without prepaying the full filing fee unless he demonstrates that he is in imminent danger of serious physical injury. Id.

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Rule 59(e) must be filed within **twenty-eight days** of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2). Any motion under Rule 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 23rd day of December, 2024.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**